UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, a pension plan
and trust established by the Charter and
Municipal Code of the City of Detroit, Michigan,
both in its own capacity and in its capacity as
Administrative and Collateral Agent for the
POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT and the GENERAL
RETIREMENT SYSTEM OF THE CITY OF
DETROIT; and the GENERAL RETIREMENT
SYSTEM OF THE CITY OF DETROIT, a
pension plan and trust established by the
Charter and Municipal Code of the City of
Detroit, Michigan,

       Plaintiffs/Counter-Defendants,

v.

DONALD V. WATKINS, an individual, and     CASE NUMBER: 08-12582
WATKINS AVIATION, LLC, a Delaware     HONORABLE VICTORIA A. ROBERTS
limited liability company,

       Defendants/Counter-Plaintiffs/
       Third-Party Plaintiffs,

v.

NORTH POINT ADVISORS, LLC,
ADRIAN ANDERSON, and JEFFREY
CONRY,

       Third-Party Defendants.
_____/

**ORDER:**
**(1) GRANTING PLAINTIFFS' MOTION TO DISMISS**
**DEFENDANTS' FIRST AMENDED COUNTER COMPLAINT;**
**(2) DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS; AND**
**(3) DENYING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

The Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS") (collectively, "the Funds") sued Donald V. Watkins and his company, Watkins Aviation, LLC, (collectively, "the Watkins Defendants" or "Watkins") for breach of contract. Watkins filed a counter complaint for breach of contract and a third-party complaint against Adrian Anderson and his company, North Point Advisors (collectively, "North Point").

Before the Court are: (1) the Funds' Amended Motion to Dismiss Watkins' First Amended Counter Complaint (Dkt. #50); (2) the Funds' Motion for Judgment on the Pleadings as to Liability (Dkt. #51); and (3) North Point's Amended Motion to Dismiss Watkins' Third-Party Complaint (Dkt. #31).

The Court **GRANTS** the Funds' motion to dismiss, **DENIES** the Funds' motion for judgment on the pleadings, and **DENIES** North Point's motion to dismiss.

## II.    BACKGROUND

### A.    Contractual Framework

This lawsuit has its roots in a deal to invest in the development of a cargo airline company. On February 26, 2008, Watkins Aviation acquired 77% of the outstanding shares of TradeWinds Airlines, Inc., becoming its majority shareholder. The same day, the Funds, Watkins and TradeWinds executed a series of interrelated agreements designed to finance the acquisition of TradeWinds, pay off the airline's debt, and provide it with needed capital. The Watkins Defendants allege North Point is the Funds' agent and financial advisor on this transaction.

#### 1.    Credit Agreement and Term Notes

The cornerstone of the deal is the Second Amended and Restated Aircraft Purchase Money Credit Agreement ("the Credit Agreement"). Through this Credit Agreement, the Funds promised to lend $30 million to TradeWinds ("the Loan"). In return, TradeWinds signed two term notes worth $15 million each, one payable to PFRS and the other to GRS.

The Credit Agreement lists several "Events of Default." If any one occurs, the Funds may demand complete and immediate repayment of the Loan. These include if TradeWinds: (1) files for bankruptcy; (2) receives permission to file for bankruptcy from its board of directors ("the Board"); or (3) fails to receive $5 million from Watkins Aviation within 30 days of signing the Loan, and another $5 million after six months.

### 2.     Watkins and Watkins Aviation Guaranties

As part of the arrangement, Mr. Watkins and Watkins Aviation executed two separate guaranty agreements ("the Guaranties") by which they assume the risk of TradeWinds' default and promise to repay the Loan in full at maturity, or earlier if required. Under these Guaranties, the Watkins Defendants waive any defense or counterclaim against the Funds that could otherwise be invoked by TradeWinds.

### 3.     Stockholders' Agreement

The Funds, Watkins Aviation and TradeWinds' then-president Jeffrey Conry also signed a Stockholders' Agreement, which requires Watkins Aviation to contribute $5 million in capital to TradeWinds within 30 days of the Loan, and another $5 million within six months. Failure to receive these payments is an Event of Default.

On March 26, 2008, Watkins Aviation conveyed $5 million to TradeWinds in cash

and stock with related carbon credit entitlements. On April 9, Mr. Anderson informed Mr. Conry by e-mail that the contribution was, according to him, "reasonable." The Funds did not initially object to the contribution.

### B. Events Leading to TradeWinds' Bankruptcy

On May 30, 2008, the Board authorized TradeWinds' management to reorganize the company, up to and including Chapter 11 restructuring. Under the Credit Agreement, the authorization of bankruptcy proceedings is an Event of Default.

On June 9, 2008, the Funds sent TradeWinds a notice of default, citing the Board's bankruptcy resolution. The Funds also claimed TradeWinds did not receive the first $5 million contribution from Watkins Aviation. A few days later, on June 13, the Funds accelerated the Loan, and on July 25, TradeWinds instituted Chapter 11 bankruptcy proceedings in U.S. Bankruptcy Court for the Southern District of Florida. Filing for bankruptcy is an Event of Default.

### C. Procedural Background

After TradeWinds' default, the Funds sued Mr. Watkins and Watkins Aviation for breaching their respective Guaranties. In their Original Complaint, the Funds also claimed Watkins Aviation breached the Stockholders' Agreement by failing to make the required $5 million contribution; the Funds dropped this claim when they amended their complaint.

The Watkins Defendants filed a counter complaint accusing the Funds of breaching the Credit Agreement by, *inter alia*, wrongfully declaring TradeWinds in default and accelerating its debt. On March 12, 2009, the Funds moved to dismiss

4

Watkins' counter complaint and for judgment on the pleadings on the issue of liability.

The Watkins Defendants also filed a third-party complaint against North Point and Mr. Anderson, accusing them of fraudulently misrepresenting the adequacy of Watkins Aviation's capital contribution. North Point moved to dismiss the third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   ANALYSIS

The Funds couch their motion against Watkins' counter complaint as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). However, the Funds' arguments relate to whether Mr. Watkins and Watkins Aviation have standing to file a breach of contract claim. Therefore, this motion is treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Bleiler v. Cristwood Constr., Inc.*, 72 F.3d 13, 15 n.1 (2d Cir. 1995) (in general, courts should dismiss claims that lack standing under Fed. R. Civ. P. 12(b)(6)). *See also* 2 James W. Moore et al., Moore's Federal Practice - Civil § 12.34[4][a] & n.52 (3d ed. 2009) (citing cases).

> To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim,
>
> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss for failure to state a claim, the district court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (*citing Westlake v. Lucas*, 537 F.2d 857,

858 (6th Cir. 1976)).  *See also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted) (alteration in original).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550 U.S. at 556).

If matters outside the pleadings are submitted, a district court may treat a motion to dismiss as one for summary judgment.  Fed. R. Civ. P. 12(d).  However, the court maintains "complete discretion to determine whether or not to accept" material beyond the pleadings on a motion to dismiss.  *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (*quoting* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1366, pp. 491-93 (1990)).  The Watkins Defendants submit various exhibits in their opposition to North Point's motion to dismiss.  The Court does not consider these exhibits for purposes of this ruling.

The standard on a Rule 12(c) motion is substantially the same as for a motion to dismiss.  *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (when considering a motion for judgment on the pleadings, courts must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." (*quoting Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

### A. The Funds' Motion to Dismiss the Counter Complaint

The Funds claim the Watkins Defendants lack standing to assert their breach of contract claims. The Watkins Defendants contend they are either parties to the Credit Agreement, or third-party beneficiaries.

#### 1. Whether the Watkins Defendants are Parties to the Credit Agreement

The Funds argue the Watkins Defendants are parties to the overall transaction, but not to every contract executed in furtherance of the deal. Specifically, the Funds contend Mr. Watkins and Watkins Aviation are not parties to the Credit Agreement, and thus cannot seek damages for its alleged breach.

In Michigan, the general rule is that one who is not a party to a contract cannot pursue a claim for breach of that agreement. *First Sec. Sav. Bank v. Aitken*, 226 Mich. App. 291, 305 (1997), *rev'd on other grounds*, *Smith v. Globe Life Ins. Co.*, 460 Mich. 446 (1999). When interpreting contractual language, a court's primary goal is to determine and enforce the parties' intent. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003). To do so, the reviewing court must "read[ ] the agreement as a whole and attempt[ ] to apply the plain language of the contract itself." *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63 (2000).

As a matter of law, "[a]n unambiguous contractual provision is reflective of the parties' intent" and must be construed and enforced as written. *Id.* (citation omitted). However, when the wording of the contract is ambiguous, "th[e] Court may construe the agreement in an effort to find and enforce the parties' intent. 'In interpreting contracts capable of two different constructions, we prefer a reasonable and fair construction over

a less just and less reasonable construction.'" *Id.* (*quoting Schroeder v. Terra Energy, Ltd.*, 223 Mich. App. 176, 188 (1997)) (citation omitted).

There is no evidence that TradeWinds and the Funds intended the Watkins Defendants to be parties to the Credit Agreement. Watkins' names do not appear on the title page, they are not mentioned in the recitation of parties to the contract, and their signatures do not appear on the last page. Section § 11.2(a), which identifies the parties upon whom the Credit Agreement has a binding effect, and to whose benefit it inures, does not cite Mr. Watkins or Watkins Aviation. The unambiguous wording of the Credit Agreement does not support Watkins' claim.

The Watkins Defendants argue that, although they are not formally named as parties, they are included in the term "Loan Parties," which appears several times in the Credit Agreement. Loan Parties are defined as "Borrower [TradeWinds] and each Guarantor." (Am. Compl. Ex. A [hereinafter Credit Agreement] at 14, § 1.1.) Since they are both guarantors of TradeWinds' debt, the Watkins Defendants meet the definition of Loan Parties. However, there is no language stating that all Loan Parties are also parties to the Credit Agreement. In fact, the wording of the agreement suggests there are several "Loan Documents," each of which is binding upon certain Loan Parties, to the exclusion of others. (*See, e.g.*, Credit Agreement 36 at § 4.2(a) ("The execution . . . by each Loan Party of the Loan Documents . . . *to which it is a party* . . .") (emphasis added); 59 at § 9.1(g) ("any provision of any Loan Document shall . . . fail to be valid and binding on . . . *any Loan Party thereto*, . . .") (emphasis added).)

The Watkins Defendants emphasize that their Guaranties are defined as "Loan Documents," along with the Credit Agreement itself. The Credit Agreement also

8

contains an integration clause, which states: "The Loan Documents embody the entire agreement of the parties and supersede all prior agreements . . .". (Credit Agreement 76 at § 11.18.)  The Watkins Defendants argue that, under § 11.18, they are parties to the "entire agreement," including the Credit Agreement.  There is no legal support for construing an integration clause in this way, and for good reason: if it were possible, every Loan Party would automatically become party to every Loan Document.  The result would be a chaotic situation in which a Loan Party could sue any other party for breach of any Loan Document.

Finally, the Watkins Defendants seek to avail themselves of the rule that "to determine the intention of the parties, separate instruments executed at about the same time, in relation to the same matter and between the same parties and made as elements of one transaction may be examined together and construed as one instrument." *W. Madison Inv. Co. v. Fileccia*, 58 Mich. App. 100, 106 (1975).  *See also Bed v. Fallon*, 307 Mich. 466, 471-72 (1943).  However, by its plain language, this rule applies only when the *same* individuals or entities are parties to separate contracts.  That is not the case here.

The Court finds the language of the Credit Agreement is unambiguous, and does not reflect an intent to include the Watkins Defendants among the contracting parties.

### 2. Whether the Watkins Defendants are Third-Party Beneficiaries

Even if they are not formal parties to the Credit Agreement, the Watkins Defendants contend they are third-party beneficiaries of the contract, and, therefore, entitled to seek redress for its breach.

While a non-party to a contract cannot assert a claim for breach of that

agreement, the Michigan legislature made an exception to this general rule for third-party beneficiaries:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.
> (2) (a) The rights of a person for whose benefit a promise has been made, as defined in (1), shall be deemed to have become vested . . . without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor . . . .
> . . .

Mich. Comp. Laws ("M.C.L.") § 600.1405.

But the Michigan Supreme Court holds that, under § 600.1405, "only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 427 (2003) (per curiam) (*citing Brunsell v. Zeeland*, 467 Mich. 293, 296 (2002)). Furthermore,

> [M.C.L. § 600.1405] states that a person is a third-party beneficiary of a contract *only when the promisor undertakes an obligation "directly" to or for the person*. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.

*Koenig v. City of S. Haven*, 460 Mich. 667, 677 (1999) (emphasis added). The question becomes, are the Watkins Defendants third parties within the meaning of M.C.L. § 600.1405, rather than incidental third parties as described in case law.

When performing the third-party analysis, Michigan courts apply "an objective

10

standard" under which they may "look no further than the 'form and meaning' of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of [§ 600.]1405." *Schmalfeldt*, 469 Mich. at 428 (*citing Brunsell*; *Koenig*; *Kammer Asphalt v. E. China Twp.*, 443 Mich. 176, 189 (1993)).

The Watkins Defendants cite the recitals section of their Guaranties as evidence that they are third-party beneficiaries of the Credit Agreement. (*See* Am. Compl. Exs. D & E, at 1 ("Guarantor will derive substantial direct and indirect benefits from the extensions of credit under the Credit Agreement.").) However, the Guaranties are not integrated into the Credit Agreement; the Court cannot consider this statement, because it is outside the four corners of the contract.

There is nothing in the form and meaning of the Credit Agreement to suggest the Watkins Defendants' are intended third-party beneficiaries. The agreement does not mandate any obligation to be undertaken directly in Watkins' favor. Nor does their condition as guarantors make them more than incidental beneficiaries of the agreement between the Funds and TradeWinds. Lastly, the fact that Watkins Aviation is TradeWinds' primary shareholder does not confer upon it the status of a third-party beneficiary. *See Edwards v. Walter Jones Constr. Co.*, No. 98-4366, 2000 U.S. App. LEXIS 4888, at *4-5 (6th Cir. Mar. 17, 2000) (unpublished) (refusing to fashion a third-party-beneficiary exception to the rule that "a shareholder is not entitled, merely by virtue of being a shareholder, to sue for alleged wrongs done to a corporation.") (*citing Weissman v. Weener*, 12 F.3d 84, 87 (7th Cir. 1993)).

The Watkins Defendants repeatedly invoke the circumstances which led to the signing of the Credit Agreement as evidence that they are third-party beneficiaries.

However, Michigan law is clear that courts may look "no further than the 'form and meaning' of the contract itself" to establish whether a party has third-party standing. *Compare Schmalfeldt*, 469 Mich. at 428, *with Fin. Auth. v. L.L. Knickerbocker Co.*, 106 F. Supp. 2d 44, 48 (D. Me. 1999) (in Massachusetts, "[w]hen evaluating the intent of the parties, a court must consider both the language of the contract as well as the surrounding facts and circumstances.").

The form and meaning of the Credit Agreement preclude finding the Watkins Defendants were intended third-party beneficiaries. Accordingly, the Court GRANTS the Funds' Motion to Dismiss the First Amended Counter Complaint (Dkt. #50).

### B.    The Funds' Motion for Judgment on the Pleadings

The Funds also seek a judgment on the pleadings, on grounds that the Watkins Defendants cannot escape liability for the Loan. The Funds argue there is no question that, if TradeWinds files for bankruptcy, Mr. Watkins and Watkins Aviation must repay the Loan in their capacity as guarantors. Since TradeWinds is currently in Chapter 11 proceedings, the Funds contend Watkins' liability is undeniable, and any claim or defense relating to events prior to TradeWinds' bankruptcy is moot.

The Watkins Defendants contend the Funds were the first to breach the Loan Documents, and did so with the intent of forcing TradeWinds into bankruptcy. They claim that, between April and June 2008, certain trustees and representatives of the Funds approached Mr. Watkins to request various improper financial favors, which he declined. The Watkins Defendants allege the Funds retaliated by challenging the adequacy of Watkins Aviation's $15 million contribution, declaring TradeWinds in default and accelerating the Loan. According to Watkins, these actions caused TradeWinds to

seek bankruptcy protection and prevented other parties, including Mr. Watkins and Watkins Aviation, from fulfilling their obligations under the deal. Mr. Watkins claims he testified about this alleged "pay-to-play" scheme before a grand jury investigating allegations of corruption in Detroit.

Construing the pleadings in the light most favorable to Watkins, the Court cannot grant the Funds' motion. Watkins' allegations of improper solicitation and retaliation are well-pled, raise material issues of fact, and preclude judgment as a matter of law in favor of the Funds. *Barany-Snyder*, 539 F.3d at 332. Moreover, the Watkins Defendants argue that, under Michigan's doctrines of first material breach and prevention, if the Funds really forced TradeWinds into bankruptcy, Watkins cannot be liable for failing to repay the Loan. The Funds' response is not sufficient for the Court to conclusively rule out these theories of defense.

The Funds' Motion for Judgment on the Pleadings is DENIED (Dkt. #51).

**C.     North Point's Motion to Dismiss the Third-Party Complaint**

The final motion the Court considers is North Point's motion to dismiss Watkins' third-party complaint, on grounds that it fails to state a claim for fraudulent misrepresentation.

To state a fraudulent misrepresentation claim under Michigan law, a plaintiff must allege that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 280 Mich. App. 397, 403 (2008); *Hord v. Envtl. Research Inst. of Mich.*, 463 Mich. 399, 404 (2000).

The third-party complaint states sufficient facts from which to reasonably infer North Point's liability for the alleged offense. Watkins allege they relied on a representation by Mr. Anderson that Watkins Aviation's conveyance to TradeWinds satisfied the requirements of the Stockholders' Agreement. Assuming it was made, this representation was material to Watkins Aviation's fulfillment of its obligations; in fact, the Funds initially sued Watkins Aviation for breaching the Stockholders Agreement, alleging the capital contribution was improper. Watkins also state that, as the Funds' business advisor, North Point knew or should have known if the form of the contribution was inadequate, and that Watkins would rely on Mr. Anderson's assessment. Together, these allegations satisfy the pleading requirements for a fraudulent misrepresentation claim.

North Point's arguments raise multiple legal and factual issues that are beyond the scope of a motion to dismiss. For instance, North Point contends it is not formally authorized to approve the form of the capital contribution. This may be true, but the fact that it is the Funds' financial advisor is enough to draw a reasonable inference that Watkins relies upon its assessments on such matters.

The amended third-party complaint does more than recite the elements of a fraudulent misrepresentation claim and meets its burden to articulate a plausible claim for relief. Therefore, North Point's Amended Motion to Dismiss is DENIED (Dkt. #31).

**IV.   CONCLUSION**

The Watkins Defendants do not have standing to assert claims for breach of the Credit Agreement; they are neither parties nor third-party beneficiaries. Therefore, the Court **GRANTS** the Funds' motion and **DISMISSES** the Watkins Defendants' First Amended Counter Complaint.

However, the Funds are not entitled to judgment as a matter of law, and their Motion for Judgment on the Pleadings as to Liability is **DENIED**.

Lastly, the Court **DENIES** North Point's Amended Motion to Dismiss Watkins' Third-Party Complaint.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 30, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2009.

s/Carol A. Pinegar
Deputy Clerk