UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, a pension plan
and trust established by the Charter and
Municipal Code of the City of Detroit, Michigan,
both in its own capacity and in its capacity as
Administrative and Collateral Agent for the
POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT and the GENERAL
RETIREMENT SYSTEM OF THE CITY OF
DETROIT; and the GENERAL RETIREMENT
SYSTEM OF THE CITY OF DETROIT, a
pension plan and trust established by the
Charter and Municipal Code of the City of
Detroit, Michigan,

       Plaintiffs/Counter-Defendants,

v.

DONALD V. WATKINS, an individual, and     CASE NUMBER: 08-12582
WATKINS AVIATION, LLC, a Delaware         HONORABLE VICTORIA A. ROBERTS
limited liability company,

       Defendants/Counter-Plaintiffs/
       Third-Party Plaintiffs,

v.

NORTH POINT ADVISORS, LLC,
ADRIAN ANDERSON, and JEFFREY
CONRY,

       Third-Party Defendants.
_____/

## ORDER DENYING DEFENDANTS'/COUNTER-PLAINTIFFS' MOTION TO COMPEL ARBITRATION AND FOR STAY OF PROCEEDINGS

**I.**     **INTRODUCTION**

The Police and Fire Retirement System of the City of Detroit ("PFRS") and the

General Retirement System of the City of Detroit ("GRS") (collectively, "the Funds") sued Donald V. Watkins and his company, Watkins Aviation, LLC, (collectively, "Watkins") for breach of contract.

Before the Court is Watkins' Motion to Compel Arbitration and for Stay of Proceedings (Dkt. #25). After the motion was fully briefed, the Funds sought leave to file a sur-reply in opposition (Doc. #45), which predictably caused Watkins to file a sur-response of its own. These filings do not add to the parties' arguments, and the Court declines to consider them for purposes of this Order.

The motion to compel arbitration is **DENIED.**

## II.   BACKGROUND

### A.   Contractual Framework

This lawsuit has its roots in a deal to invest in the development of a cargo airline company. On February 26, 2008, Watkins Aviation acquired 77% of the outstanding shares of TradeWinds Airlines, Inc., becoming its majority shareholder. The same day, the Funds, Watkins and TradeWinds executed a series of interrelated agreements designed to finance the acquisition of TradeWinds, pay off the airline's debt, and provide it with needed capital.

#### 1.   Credit Agreement and Term Notes

The cornerstone of the deal is the Second Amended and Restated Aircraft Purchase Money Credit Agreement ("the Credit Agreement"). Through this Credit Agreement, the Funds promised to lend $30 million to TradeWinds ("the Loan"). In return, TradeWinds signed two term notes worth $15 million each, one payable to PFRS

and the other to GRS.

The Credit Agreement defines a number of instances in which the Funds may declare TradeWinds in default and accelerate repayment of the Loan ("Events of Default"). These include if TradeWinds: (1) files for bankruptcy; (2) receives permission to file for bankruptcy from its board of directors ("the Board"); or (3) fails to receive $5 million from Watkins Aviation within 30 days of signing the Loan, and another $5 million after six months.

### 2. Watkins and Watkins Aviation Guaranties

As part of the arrangement, Mr. Watkins and Watkins Aviation executed two separate guaranty agreements ("the Guaranties") by which they assume the risk of TradeWinds' default and promise to repay the Loan in full at maturity, or earlier if required.

### 3. Stockholders' Agreement

The Funds, Watkins Aviation and TradeWinds' then-president Jeffrey Conry also signed a Stockholders' Agreement, which requires Watkins Aviation to contribute $5 million in capital to TradeWinds within 30 days of the Loan, and another $5 million within six months. Failure to receive these payments is an Event of Default.

The Stockholders' Agreement contains the following Arbitration Clause:

> All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be decided by mandatory and binding arbitration by a single arbitrator in Detroit, Michigan in accordance with the rules of the American Arbitration Association ("AAA") currently in effect unless the parties mutually agree otherwise. . . .

(Am. Compl. Ex. H at 10, § 5.3.) This clause is the basis for Watkins' motion.

### B.     Events Leading to TradeWinds' Bankruptcy

On May 30, 2008, the Board authorized TradeWinds' management to reorganize the company, up to and including Chapter 11 restructuring.  Under the Credit Agreement, the authorization of bankruptcy proceedings is an Event of Default.

On June 9, 2008, the Funds notified TradeWinds that it was in default of its Credit Agreement obligations due to, *inter alia*, the Board's bankruptcy resolution and TradeWinds' failure to obtain the first capital contribution from Watkins Aviation.  A few days later, on June 13, the Funds accelerated the Loan, and on July 25, TradeWinds instituted Chapter 11 bankruptcy proceedings in U.S. Bankruptcy Court for the Southern District of Florida.  Filing for bankruptcy is an Event of Default.

### C.     Procedural Background

On June 17, 2008, the Funds filed their Original Complaint.  They alleged three grounds upon which TradeWinds defaulted on its Loan obligations, including its failure to receive $5 million from Watkins Aviation.  The first two counts of the Original Complaint charged Mr. Watkins and Watkins Aviation with breach of guaranty, and a third count accused Watkins Aviation of breaching the Stockholders' Agreement by failing to contribute capital to TradeWinds.  The fourth count asked for a declaratory judgment approving the sale by PFRS of TradeWinds' stock.

Watkins responded with a counterclaim amended on July 18, 2008.  The amended counterclaim accuses the Funds of breaching their contractual obligations under the Credit Agreement by wrongfully: (1) declaring TradeWinds in default; (2) accelerating the entire TradeWinds' debt; (3) causing negative publicity to be published

regarding TradeWinds; and (4) precluding Watkins Aviation from exercising its rights as majority shareholder of TradeWinds.  The Court dismissed Watkins' counterclaim for lack of standing (Dkt. #63).

On September 29, 2008, Watkins filed a demand for arbitration with the AAA to resolve the question of whether Watkins Aviation's $5 million contribution satisfied the Stockholders' Agreement.  A month later, Watkins filed this motion to compel arbitration and stay judicial proceedings.

On December 22, 2008, the Funds amended their complaint with the Court's leave.  The Amended Complaint restates the three original Events of Default, and cites three new grounds for default: (1) TradeWinds's failure to inform the Funds that it acquired a jet engine; (2) the Board resolution authorizing bankruptcy; and (3) TradeWinds' bankruptcy filing.  The Amended Complaint also discards claims against Watkins Aviation for breach of the Stockholders' Agreement.  Instead, the Funds claim only that Mr. Watkins and Watkins Aviation breached their respective Guaranties by failing to repay the Loan after TradeWinds' default.

### III.   APPLICABLE LAW

The Court begins by outlining the federal law of arbitration, before turning to whether this dispute is arbitrable.

#### A.   The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation." *Morgan v. Smith Barney, Harris Upham & Co.*,

729 F.2d 1163, 1165 (8th Cir. 1984). Under § 2 of the FAA,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Furthermore, the FAA provides that if, in the course of a judicial proceeding, an issue arises that is referable to arbitration under a written agreement between the parties,

> the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA leaves district courts "no place for the exercise of discretion" in compelling arbitration of pendent arbitrable claims). A court may also, upon request by one party, direct the other party to participate in arbitration, even if the dispute is not otherwise before the court. *See* 9 U.S.C. § 4.

Neither party disputes that the Guaranties are contracts concerning transactions involving interstate commerce. Therefore, if the Court finds the Arbitration Clause valid and the dispute arbitrable, the FAA will govern.

### B.    Determination of Arbitrability

Unless there is clear and unmistakable evidence that the parties intended to arbitrate arbitrability, i.e. to let an arbitrator decide whether they intended to arbitrate their disputes in the first place, the issue is for the courts to decide. *See First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). The parties agree that arbitrability is a question for the Court.

> "[A]rbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). To determine if a dispute is arbitrable, a court must analyze: (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (*citing AT&T Techs.*, 475 U.S. at 649). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted)).

The Funds do not contest the validity of the Stockholders' Agreement, nor do they challenge Watkins' assertion that, under that agreement, the question of whether Watkins Aviation contributed $5 million in capital to TradeWinds must be resolved through arbitration. Therefore, if Watkins Aviation's performance under the Stockholders' Agreement is an issue, the Court must refer it to arbitration.

**IV.    ANALYSIS**

Watkins contends this litigation should be stayed pending arbitration of whether Watkins Aviation's capital contribution to TradeWinds satisfied the Stockholders' Agreement. Watkins relies on the Original Complaint, which claimed Watkins Aviation breached the Stockholder's Agreement by failing to provide $5 million to TradeWinds. Watkins argues this claim places Watkins Aviation's compliance with the Stockholder's Agreement at issue and compels arbitration.

The Court disagrees.  The Funds' Amended Complaint does not allege Watkins Aviation breached the Stockholders' Agreement, and therefore this claim is not before the Court.  The remaining claims concern Mr. Watkins and Watkins Aviation's alleged breach of their respective Guaranties.  The Guaranties are separate contracts from the Stockholders' Agreement, and claims pertaining to their breach are beyond the scope of the Arbitration Clause.

Furthermore, the Court dismissed Watkins' counterclaims against the Funds for lack of standing.  To the extent these counterclaims raised Watkins Aviation's performance under the Stockholders' Agreement, they are no longer before the Court.

Because no issue is subject to arbitration, the Court will not compel arbitration or stay these proceedings under FAA § 3.  However, this does not preclude Watkins from arbitrating the adequacy of Watkins Aviation's capital contribution.  If the Funds refuse to participate, Watkins may ask the Court to compel arbitration pursuant to 9 U.S.C. § 4.  Watkins' motion does not allege that the Funds refuse to take part in arbitration; in fact, in another submission to this Court, Watkins states the issue is "currently being arbitrated."  (Opp'n to 3d Party's Mot. Dismiss 1 (Dkt. #38).)  Therefore, unless Watkins requests otherwise, the Court will not order arbitration under FAA § 4.

## V.   CONCLUSION

The Funds dropped their breach of Stockholders' Agreement claim against Watkins Aviation and the Court dismissed Watkins' counterclaims.  The remaining claims do not involve issues referable to arbitration.  Therefore, Watkins' Motion to Compel Arbitration and for Stay of Proceedings is **DENIED**.  The Funds' Motion for

Leave to File Sur-Reply is also **DENIED**.

      **IT IS ORDERED**.

                                                   S/Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated:  September 30, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2009.

s/Carol A. Pinegar
Deputy Clerk

---