UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF
DETROIT, et al.,

    Plaintiffs,

v.

DONALD V. WATKINS, et al.,

    Defendants.
_____/

CIVIL ACTION NO. 08-12582

DISTRICT JUDGE VICTORIA A. ROBERTS

MAGISTRATE JUDGE DONALD A. SCHEER

# REPORT AND RECOMMENDATION

**I. RECOMMENDATION**:

I recommend that Defendants' Motion to Dismiss Certain Claims or, in the Alternative, for Stay of Proceedings, be denied.

**II. REPORT**:

### A. Factual and Procedural History

This lawsuit arises from a complex of commercial relationships among the parties and various non-parties. Those relationships were established by a series of business documents.

On February 26, 2008, the Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS"), as lenders, and Trade Winds Airlines, Inc. ("Trade Winds"), as borrower, entered into a Second Amended and Restated Aircraft Purchase Money Credit Agreement (the "credit agreement"). Pursuant to the credit agreement, PFRS and GRS (collectively "Funds") loaned Trade Winds $30,000,000.00. Trade Winds executed two $15,000,000.00 term

notes, one payable to each lender. PFRS served as the administrative agent for the Funds.

In conjunction with the credit agreement, Defendant Donald V. Watkins ("Watkins") executed in favor of the Funds a written guarantee of "the full and punctual payment when due, whether at stated maturity or earlier (by reason of accelerator, mandatory pre-payment or otherwise in accordance with any loan document), of all the obligations of the borrower now existing or hereinafter incurred or created." A similar written guarantee was executed in favor of the Funds by Watkins Aviation, LLC ("Watkins Aviation"). Watkins Aviation held a majority interest in Trade Winds, and Watkins is the manager of Watkins Aviation.

Also executed on February 26, 2008 was a stockholders agreement among PFRS, GRS, Watkins Aviation, Trade Winds and others. The stockholders agreement provided that Watkins Aviation would contribute capital in the amount of $5,000,000.00 to Trade Winds within 30 days, and another $5,000,000.00 within 180 days of the loan closing.

On June 17, 2008, PFRS and GRS filed this action against Watkins and Watkins Aviation. Plaintiffs alleged various breaches of the credit agreement by Trade Winds, including the failure to receive a capital contribution from Watkins Aviation within thirty days of the loan closing. Counts I and II of the Complaint sought recovery under the Watkins and Watkins Aviation guarantees, respectively. Count III sought recovery against Watkins Aviation for breach of the stockholders agreement, based upon the failure of Watkins Aviation to make the $5,000,000.00 capital contribution to Trade Winds within 30 days of the loan closing. Count IV of the original Complaint sought a declaratory judgment with

2

respect to the disposition of Trade Winds stock owned by Watkins Aviation and pledged as security to PFRS.

On October 29, 2008, Watkins Aviation filed its Motion to Compel Arbitration and for Stay of Proceedings (Docket Entry 25), based upon a provision of the stockholders agreement calling for mandatory and binding arbitration of "all claims, disputes and other matters in question between the parties to this agreement arising out of or relating to this agreement or the breach thereof . . .." Defendants asserted that a key, threshold issue in the case was whether or not Watkins Aviation placed Trade Winds into default of its loan from Plaintiffs by failing to make a required capital contribution.

On November 11, 2008, PFRS and GRS filed a Motion for Leave to File a First Amended Complaint (Docket Entry 29). The proposed Amended Complaint added three events to the list of alleged breaches by Trade Winds of the credit agreement, and abandoned the original Count III against Watkins Aviation for breach of the stockholders agreement. Also abandoned was the original Count IV relating to the pledge by Watkins Aviation of 1,540 shares of the stock of Trade Winds. On December 18, 2008, the district judge entered an Order Granting Plaintiff's Motion for Leave to Amend (Docket Entry 43). On September 30, 2009, the court denied Defendants' Motion to Compel Arbitration and For Stay of Proceedings (Docket Entry 64). In her analysis, the district judge observed that:

> The Funds' Amended Complaint does not allege Watkins Aviation breached the stockholders agreement, and therefore this claim is not before the court. The remaining claims concern Mr. Watkins and Watkins Aviation's alleged breach of their respective guarantees. The guarantees are separate contracts from the stockholders agreement, and claims

> pertaining to their breach are beyond the scope of the arbitration clause.

Order Denying Motion to Compel Arbitration and for Stay of Proceedings, Docket Entry 64.

Subsequent to the court's denial of their Motion to Compel Arbitration, Defendants served two requests for admission upon Plaintiffs. The first request sought an admission that Plaintiffs agreed with a statement in the court's September 30, 2009 Order that "[I]f Watkins Aviation's performance under the stockholders agreement is an issue, the court must refer it to arbitration." The second sought an admission "that Plaintiffs are no longer claiming in this suit that Watkins Aviation failed to make the capital contribution required by the stockholders agreement." Plaintiffs denied the first request outright. They objected to the second request as "outside the scope of Fed.R.Civ.P. 36(a)(1)." Subject to, and without waiver of their objection, Plaintiffs denied the request, explaining that "[a]lthough Plaintiffs have opted to cease pursuit of Watkins Aviation's breach of the stockholders agreement in this case, that does not mean that 'Plaintiffs are no longer claiming in this suit that Watkins Aviation failed to make the capital contributions required by the stockholders agreement.'" (See Exhibit A to instant Motion).

Based upon Plaintiffs' Responses, Defendants filed the instant Motion to Dismiss Certain Claims or, in the Alternative, for Stay of Proceedings (Docket Entry 78). They maintain that the failures to admit constitute a repudiation of Plaintiffs' representation to the court that they would abandon their claim against Watkins Aviation for breach of the stockholders agreement, and thus render "moot" the issue of whether Watkins Aviation had fully performed its obligations as defined in that document. "[I]t is clear," Defendants argue, "that the Plaintiffs are attempting to proceed on a claim which they had previously

represented to the court had been . . . removed entirely from the case." According to the Defendants, "[e]ither this issue remains in this case, in which case it must be referred to arbitration and the proceedings stayed pending the outcome of that fundamental issue, or alternatively, the court should dismiss all claims that the required capital contribution as called for in the stockholders agreement was not made." (Docket Entry 78, Brief, page 5).

In their Response Brief, Plaintiffs acknowledge that their original Complaint sought relief against both Watkins and Watkins Aviation under the terms of their respective guarantee agreements and against Watkins Aviation for breach of its obligations under the stockholders agreement. They observe, however, that the latter claim was omitted from their First Amended Complaint. Consequently, Plaintiffs argue that the instant case "has nothing to do with the stockholders agreement." That may be something of an overstatement, since Plaintiffs do admit that Watkins Aviation's failure to make a required capital contribution to Trade Winds was a "factual allegation common to both claims" against Watkins Aviation in the original Complaint. That factual allegation is restated in the First Amended Complaint, at paragraph 29. Nonetheless, the amended pleading contains no claim for relief against Watkins Aviation for breach of the stockholders agreement. Rather, it alleges, at paragraph 31, that Trade Winds' failure to receive the capital contribution from Watkins Aviation was an event of default under Section 9.1(k) of the Credit Agreement.

Plaintiffs correctly point out that Section 9.1(k) of the Credit Agreement specifically provides that the failure of Trade Winds to receive a capital contribution of $5,000,000.00 from Watkins Aviation on or before the 30th day following the closing date would constitute an event of default. The First Amended Complaint alleges that Trade Winds did fail to

5

receive the capital contribution and, thus, breached its obligation under the Credit Agreement. Plaintiffs emphasize that "while the stockholders agreement required Defendant Watkins Aviation to **make** a capital contribution to Trade Winds, Trade Winds' failure to **receive** this capital contribution was also an event of default under the Credit Agreement." (Emphasis in original). Plaintiffs' Response, Docket Entry 83, page 4.

Defendants characterize the distinction as "down-right silly". They offer a hypothetical scenario in which a restaurant served a cheeseburger, but forgot to include the meat. In the analogy, the restaurant denies any breach of duty to the customer, claiming that the issue is not whether it had a duty to **supply** the meat, but rather whether the customer had a right to **receive** the meat." With all due respect, I find the analogy seriously flawed, as only one contract and two parties are involved. In the case at bar, the Funds were party to two distinct contracts, one (the stockholders agreement) obligating Watkins Aviation to make a capital contribution, and the other (the credit agreement) obligating Trade Winds to receive it. The Credit Agreement imposes no obligation upon Watkins Aviation. The district judge has already held that "the language of the Credit Agreement is unambiguous, and does not reflect an intent to include the Watkins Defendants among the contracting parties." (Order Granting Plaintiffs' Motion to Dismiss, Docket Number 63, page 12). The court further found that the "form and meaning of the Credit Agreement preclude finding the Watkins Defendants were intended as third party beneficiaries." Id, page 12. There is no question that this lawsuit asserts claims for relief based solely upon Trade Winds' breach of the Credit Agreement and the failure of the Watkins Defendants to meet their obligations under their respective guarantees. No relief

6

is sought for violation of the stockholders agreement. In denying Defendants earlier Motion to Compel Arbitration, the court determined that "[t]he guarantees are separate contracts from the stockholders agreement, and claims pertaining to their breach are beyond the scope of the arbitration clause." (Docket Entry 64, page 8). A similar distinction exists between the credit agreement and the stockholders agreement.

This court has ruled that "if Watkins Aviation's performance under the stockholders agreement is an issue, the court must refer it to arbitration." (Order, Docket Entry 64, page 7). I take that language to mean "an issue" between the Funds and Watkins Aviation. In order to avoid such an issue, the Funds have abandoned their stockholders agreement claims against Watson Aviation. Under the doctrine of claim preclusion (res judicata), a final judgment in this case will bar the Funds from asserting any claim against Watkins Aviation that could have been presented here. Browning v. Levy, 283 F.3d 761 (6th Cir. 2002); Begala v. PNC Bank, 214 F.3d 776 (6th Cir. 2000). The adequacy of "Watkins Aviation's performance under the stockholders agreement" is no longer an issue in this case. Plaintiffs' allegation regarding Watkins Aviation's failure to pay the $5,000,000.00 capital advance to Trade Winds is merely a factual predicate for their substantive claim that Trade Winds failed to receive such a payment, as it was obligated to do under the terms of the Credit Agreement.

There is an issue between the Funds and Watkins Aviation with respect to the latter's liability under its guarantee, and the facts relating to the payment of the $5,000,000.00 capital contribution to Trade Winds are certainly relevant to that issue. The guarantee contract, however, contains no arbitration clause. Watkins Aviation is free to contest the Plaintiffs' factual assertions in defending the guarantee claim. While the

7

language of the arbitration clause in the stockholders agreement is broad, I reject the proposition that it can reasonably be construed to require arbitration in a lawsuit based entirely upon two separate and distinct contracts which themselves impose no arbitration requirement. Had the parties intended the arbitration clause in the stockholders agreement to govern disputes arising under other contracts containing no arbitration provisions, they should have clearly said so. I conclude that, as Plaintiffs make no claim "under the stockholders agreement" in this action, arbitration is not required. I recommend that the Defendants' Motion to Dismiss Certain Claims or, in the Alternative, for Stay of Proceedings be denied.

### III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5)

pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer<br>DONALD A. SCHEER<br>UNITED STATES MAGISTRATE JUDGE

DATED: March 22, 2010

_____

### CERTIFICATE OF SERVICE

I hereby certify on March 22, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 22, 2010: **None.**

s/Michael E. Lang<br>Deputy Clerk to<br>Magistrate Judge Donald A. Scheer<br>(313) 234-5217

9