UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, a pension plan
and trust established by the Charter and
Municipal Code of the City of Detroit, Michigan,
both in its own capacity and in its capacity as
Administrative and Collateral Agent for the
POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT and the GENERAL
RETIREMENT SYSTEM OF THE CITY OF
DETROIT; and the GENERAL RETIREMENT
SYSTEM OF THE CITY OF DETROIT, a
pension plan and trust established by the
Charter and Municipal Code of the City of
Detroit, Michigan,

       Plaintiffs/Counter-Defendants,

v.

DONALD V. WATKINS, an individual, and    CASE NUMBER: 08-12582
WATKINS AVIATION, LLC, a Delaware    HONORABLE VICTORIA A. ROBERTS
limited liability company,

       Defendants/Counter-Plaintiffs/
       Third-Party Plaintiffs,

v.

NORTH POINT ADVISORS, LLC,
ADRIAN ANDERSON, and JEFFREY
CONRY,

       Third-Party Defendants.
                                                   /

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. INTRODUCTION

Donald V. Watkins and Watkins Aviation, LLC (collectively, "Watkins"), filed a

Motion to Dismiss Certain Claims or, in the Alternative, for Stay of Proceedings. (Dkt.

#78.) The Court referred the motion to Magistrate Judge Donald A. Scheer. On March 22, 2010, the Magistrate Judge filed a Report and Recommendation ("R&R") for the Court to deny the motion. (Dkt. #86.) Defendants timely objected. (Dkt. #87.)

The Court **ADOPTS** the Report and Recommendation and **DENIES** the underlying motion.

## II. BACKGROUND

This lawsuit has its roots in an investment deal between Watkins and two retirement funds (the Police and Fire Retirement System of the City of Detroit ("PFRS") and the General Retirement System of the City of Detroit ("GRS") (collectively, "the Funds"). The purpose of this agreement was to invest in the development of a cargo airline company to operate out of Detroit Metropolitan Airport.

### A. Contractual Framework

On February 26, 2008, Watkins Aviation acquired 77% of the outstanding shares of TradeWinds Airlines, Inc., becoming its majority shareholder. The same day, the Funds, Watkins and TradeWinds executed a series of interrelated agreements, designed to finance the acquisition of TradeWinds, pay off the airline's debt, and provide it with needed capital.

#### 1. Credit Agreement and Term Notes

The cornerstone of the deal is the Second Amended and Restated Aircraft Purchase Money Credit Agreement ("the Credit Agreement"), pursuant to which the Funds promised to lend TradeWinds $30 million ("the Loan"). In return, TradeWinds signed two term notes worth $15 million each, one payable to PFRS and the other to

2

GRS.

The Credit Agreement defines several instances in which the Funds may declare TradeWinds in default and accelerate the Loan. These "events of default" include if TradeWinds: (1) files for bankruptcy; (2) receives permission to file for bankruptcy from its board of directors ("the Board"); or (3) fails to receive $5 million from Watkins Aviation within 30 days of signing the Loan, and another $5 million after six months.

### 2. Watkins and Watkins Aviation Guaranties

As part of the arrangement, Mr. Watkins and Watkins Aviation executed two separate agreements, by which they assume the risk of TradeWinds' default and promise to repay the Loan in full at maturity, or earlier if required ("the Guaranties").

### 3. Stockholders' Agreement

The Funds, Watkins Aviation and TradeWinds' then-president Jeffrey Conry also signed a Stockholders' Agreement, which requires Watkins Aviation to contribute $5 million in capital to TradeWinds within 30 days of the Loan, and another $5 million within six months. Failure to receive these payments is an event of default.

The Stockholders' Agreement contains the following Arbitration Clause:

> All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be decided by mandatory and binding arbitration by a single arbitrator in Detroit, Michigan in accordance with the rules of the American Arbitration Association ("AAA") currently in effect unless the parties mutually agree otherwise. . . .

(Am. Compl. Ex. H at § 5.3.)

### B. Events Leading to TradeWinds' Bankruptcy

On March 26, 2008, Watkins Aviation conveyed $5 million to TradeWinds in cash

and stock with related carbon credit entitlements. The Funds did not object to this transfer, or challenge its validity as a capital contribution.

On May 30, 2008, the Board authorized TradeWinds' management to reorganize the company, up to and including Chapter 11 restructuring. Under the Credit Agreement, the authorization of bankruptcy proceedings is an event of default. At least one of the Funds' two representatives on the Board participated in the meeting and voted to authorize reorganization.

On June 9, 2008, the Funds notified TradeWinds that it was in default of its Credit Agreement obligations due to, *inter alia*, the Board's bankruptcy resolution and TradeWinds' failure to obtain the first capital contribution from Watkins Aviation. A few days later, on June 13, the Funds accelerated the Loan, and on July 25, TradeWinds instituted proceedings under Chapter 11. Filing for bankruptcy is an event of default.

### C. Procedural Background

The Original Complaint was filed on June 17, 2008. The Funds alleged that: (1) TradeWinds defaulted on its Loan obligations by, *inter alia*, failing to receive $5 million from Watkins Aviation; (2) Mr. Watkins and Watkins Aviation breached the Guaranties by failing to repay the Loan; and (3) Watkins Aviation breached the Stockholders' Agreement by failing to make the first capital contribution to TradeWinds.

On September 29, 2008, Watkins filed a demand for arbitration to resolve the question of whether Watkins Aviation's capital contribution satisfied the Stockholders' Agreement. Watkins also moved for the Court to compel arbitration and stay judicial proceedings. (Dkt. #25.)

In response, the Funds argued that Watkins Aviation's alleged failure to make the

4

capital contribution was mooted as an event of default by TradeWinds' subsequent filing for bankruptcy. Therefore, they asked for leave to amend their complaint and drop claims for breach of the Stockholders' Agreement. Even without leave to amend, the Funds stated they would not pursue this claim, since the breach of the Stockholders' Agreement was "simply not at issue." (Dkt. #41, at 6-8.)

On December 22, 2008, the Funds filed their Amended Complaint, which still alleges that TradeWinds failed to receive $5 million from Watkins Aviation, and cites several other events of default, including the Board's authorization to file for bankruptcy. The Funds no longer claim Watkins Aviation breached the Stockholders' Agreement, only that Mr. Watkins and Watkins Aviation failed to repay the Loan in accordance with their Guaranties.

On September 30, 2009, the Court denied Watkins's motion to compel arbitration and stay proceedings. (Dkt. #64.) The Court held that the arbitration clause of the Stockholder's Agreement is valid, and requires that disputes over Watkins Aviation's capital contribution be arbitrated. However, the Court determined that, since the Funds dropped their claim for breach of the Stockholders' Agreement, the only remaining claims arise under the Guaranties, which are not subject to arbitration. The Court also noted that arbitration was already in progress to determine the adequacy the capital contribution. Therefore, the Court concluded that it was not necessary to compel arbitration or stay the proceedings.

Following this ruling, Watkins served the Funds with two requests for admission. Watkins asked the Funds to stipulate that: (1) "if Watkins Aviation's performance under the Stockholders' Agreement is an issue, the Court must refer it to arbitration"; and (2)

the Funds are "no longer claiming in this suit that Watkins Aviation failed to make the capital contribution required by the Stockholders Agreement." The Funds refused. As to the second request, the Funds stated: "Although Plaintiffs have opted to cease pursuit of Watkins Aviation's breach of the Stockholders Agreement in this case, that does not mean that 'Plaintiffs are no longer claiming in this suit that Watkins Aviation failed to make the capital contributions required by the Stockholders Agreement.'" (Opp'n Ex. A, at 3.)

Based on these responses, Watkins moved to dismiss the Funds' allegations that Watkins Aviation breached the Stockholder's Agreement, or, in the alternative, for stay of the proceedings. The Magistrate Judge recommends denying this motion.

## III. ANALYSIS

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* By requiring de novo review, Congress recognized that "Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). In this way, § 636(b)(1) ensures that a district judge is "the final arbiter" of matters referred to a magistrate judge. *Flournoy v. Marshall*, 842 F.2d 875, 878 (6th Cir. 1988).

Watkins's brief of objection to the R&R reiterates arguments in support of the underlying motion. Watkins invokes the doctrine of judicial estoppel, which "forbids a party 'from taking a position inconsistent with one successfully and unequivocally

6

asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 (6th Cir. 1990) (*quoting Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir. 1988)). According to Watkins,

> [i]n order to induce this Court to deny the Motion to Compel Arbitration and Stay of Proceedings, Plaintiffs represented, repeatedly, to this Court that the issue of Watkins Aviation's compliance with the Stockholders Agreement had been rendered "moot" and that they were "abandoning" all such claims. Then, after the Court [denied the motion to compel], Plaintiffs did a complete 180 and are now taking the position that . . . this is an issue in this case.

(Defs.' Objections to R&R, at ¶ 14.) In other words, Watkins argues that by initially claiming that breach of the Stockholders' Agreement was "not at issue," and then refusing to admit that the capital contribution was proper, the Funds managed to force Watkins Aviation to defend its actions in Court, rather than before an arbitrator.

The Court disagrees that refusing to compel arbitration either prejudiced Watkins or gave the Funds an unfair advantage. The Court denied the motion because: (1) the Funds claim only that Mr. Watkins and Watkins Aviation breached their Guaranties; and (2) these claims are not subject to arbitration. However, the Court did not forbid Watkins from arbitrating whether the capital contribution was made. Indeed, Watkins represents that arbitration *is* under way to resolve this very question, with the Funds' willing participation. To the extent that this issue may bear on this litigation, the ruling of the arbitrator will be given preclusive effect. *See Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 259 (6th Cir. 1991). Therefore, even if their positions appear inconsistent, the Funds do not stand to gain an unfair benefit.

IV.  **CONCLUSION**

The Court **ADOPTS** Magistrate Judge Scheer's Report and Recommendation.

7

Watkins's Motion to Dismiss Certain Claims or, in the Alternative, for Stay of Proceedings is **DENIED**.

**IT IS ORDERED**.

                                                     S/Victoria A. Roberts
                                                     Victoria A. Roberts
                                                     United States District Judge

Dated: August 20, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 20, 2010.

s/Carol A. Pinegar
Deputy Clerk

---