UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,
ET AL.,

        Plaintiffs,

v.

DONALD V. WATKINS, ET AL.,

        Defendants.
        /

Case No. 08-cv-12582

District Judge Victoria A. Roberts

Magistrate Judge R. Steven Whalen

**OPINION AND ORDER**

Before the Court is Plaintiffs' Motion *In Limine* to Exclude the Expert Report, Rebuttal Report, and Related Expert Testimony of Donald V. Watkins [Doc. #139]. For the reasons and under the terms discussed below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.   BACKGROUND**

The Plaintiffs' First Amended Complaint [Doc. #44] alleges as follows. In February of 2008, Plaintiffs entered into a credit agreement with TradeWinds Airlines, Inc. ("TradeWinds"), under which they lent TradeWinds $30,000,000. Defendants Donald Watkins and Watkins Aviation each guaranteed the loan to TradeWinds. In addition, Watkins Aviation (which owns a majority share of TradeWinds stock), agreed to make a $5,000,000 capital contribution to TradeWinds by March 28, 2008 and an additional $5,000,000 within 180 days after February 26, 2008.

Plaintiffs declared a default on the loan, and brought suit under the Watkins and Watkins Aviation guarantees. They allege that Watkins Aviation failed to make the

required capital contributions, and that TradeWinds' resultant failure to receive the capital contributions from Watkins Aviation was an "Event of Default" under the credit agreement.[1]

Defendants bring counterclaims of First Amendment retaliation and conspiracy to retaliate, under 42 U.S.C. §§ 1983 and 1985, respectively, alleging that the Plaintiffs declared a default and sued under the guarantees in retaliation for Mr. Watkins' "perceived political affiliation with and support of" former Detroit Mayor Kwame Kilpatrick.[2] *Counterclaim [Doc. #133], Exhibit 2, ¶¶ 44-47, 51.*

Central to the present motion is the question of the sufficiency of Defendants' capital contributions to TradeWinds. On March 26, 2008, in lieu of $5,000,000 cash for the initial contribution, TradeWinds contributed (1) $638,285.62 in cash, (2) $361,714.38 as "a waiver of Watkins Aviation entitlement...in reimbursable TradeWinds acquisition transactional expenses," and (3) a grant of "$4,000,000 of Pencor Orange Corp. stock and related carbon credit entitlement derived from Pencor's ownership interests in the Orange Recycling and Ethanol Production Facility,...City of Middletown, Orange County, New York." The Middletown facility, which was intended to convert trash into ethanol, was proposed by Masada Resource Group, LLC ("Masada"), owned by Mr. Watkins. As of March 26, 2008 (the date of Defendants' purported capital contribution to TradeWinds), the Masada/Middletown project had not been built, and indeed, to this day ground has not been broken for the project.

---

[1] Plaintiffs also allege other events of default by TradeWinds.

[2] Defendant Watkins also alleges that shortly before the Plaintiffs declared a default, "a number of the Trustees of the Detroit Pensions Funds and/or their representatives" sought improper monetary benefits and other favors from him, including a request "for a $100,000 cash donation to former Detroit Mayor Kwame Kilpatrick's legal defense fund." *Defendants' Counterclaim [Doc. #133], Exhibit 2, ¶¶ 27-29.*

Plaintiffs frame the issue as follows:

"The primary disputes with regard to this default are whether the capital contribution was required to be in cash, and whether the 'carbon credit entitlements' could be monetized into cash. Therefore, the value and liquidity of the 'carbon credit entitlements' is an issue in dispute in this case." *Brief in Support of Plaintiffs' Motion [Doc. #139], p.2.*

On February 28, 2011, Donald Watkins filed a report, authored by himself, and offered as an expert report under Fed.R.Ev. 702.[3] The report contains Mr. Watkins' opinion as to the value of the Masada group of companies and the availability and value of its carbon credit entitlements. Mr. Watkins opined that "[t]he capital contribution of Pencor stock and related carbon credits Watkins made to TradeWinds Airlines on March 26, 2008...had a market value at the time of conveyance in excess of $5 million."

Plaintiffs filed their own expert report authored by Michael Gillenwater, Executive Director and Dean of the Greenhouse Gas Management Institute. Mr. Gillenwater opined that because the Masada/Middletown facility did not exist, and had not been registered with any carbon offset programs, the value of the Pencor stock and related carbon credit entitlements was speculative, and had essentially no value.[4]

Mr. Watkins and Mr. Gillenwater both filed rebuttal reports.

Defendants now seek to strike both Watkins' reports and to preclude Mr. Watkins' proposed expert testimony related to his reports.

## II. DISCUSSION

### A. Rule 702

Fed.R.Evid. 702 provides as follows:

---

[3] The Watkins report, titled "Pencor/Masada Asset Valuation Report," is appended to Defendants' motion as Exhibit B.

[4] The Gillenwater report is appended to Defendants' motion as Exhibit D.

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Rule 702, as amended in 2000, codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). *See* Rule 702 advisory committee's notes, 2000 amend. ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science."). The admissibility of expert testimony under Rule 702 is addressed to the trial judge's discretion. *Id.*; *Daubert,* 509 U.S. at 594. In *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 528-29 (6th Cir.2008), the Sixth Circuit described the Rule 702/*Daubert* process as follows:

> "Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' *Id.* Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.' *Id.* In addition, *Daubert* provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: 'testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community.' *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001) (citing *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786).

Defendants argue that Watkins is not sufficiently qualified by virtue of

"knowledge, skill, experience, training, or education" to give an expert opinion under Rule 702. I agree.

An expert's qualifications "must relate to the subject matter of his proposed testimony," *Berry v. Crown Equipment Corp.*, 108 F.Supp.2d 743, 749 (E.D. Mich. 2000), which in this case is the value of the Pencor stock and related carbon credit entitlements. Mr. Watkins is a lawyer. He does not have an advanced degree–or any degree–in business economics or accounting, nor is he a member of any professional organizations that establish mandatory standards for business valuations. He has no training in environmental science or carbon emissions that would qualify him to analyze or valuate carbon credits. He has not published any articles on asset valuation, and has never testified as an expert witness.

Defendants concede these deficiencies, and instead argue that Watkins is qualified as an expert by dint of his experience. Specifically, they ask the Court to consider three factors: "(a) Mr. Watkins' business valuation responsibilities as chairman of Alamerica Bank and a board member of State Mutual Insurance Company; (b) Mr. Watkins' duties as the sole owner of Pencor and the designated manager of all Masada entities; and (c) Mr. Watkins' extensive litigation experience in business valuations." *Defendant's Response [Doc. #144], p.9*.

While Watkins may have some level of knowledge about business valuations, neither his experience as a business person nor his relationship to Pencor or the Masada entities makes him an "expert" within the meaning of Rule 702. Most CEOs and high lever managers deal with valuations, but generally do so with the advice of other experts. In fact, as Plaintiffs point out, Mr. Watkins' report in this case is based on the valuation report prepared by Black Emerald, Ltd. in November of 2009.

Nor does Mr. Watkins' litigation experience qualify him as an expert. Defendants point to his successful defense of Richard Scrushy[5], the defendant in a multi-billion dollar criminal fraud prosecution that involved, in part, the valuation of Scrushy's HealthSouth Corporation. While Mr. Watkins is to be commended for his advocacy skills, an attorney who may develop some functional prowess in presenting a technical defense does not himself become a qualified *expert*. A lawyer who successfully asserts an insanity defense in a criminal case is certainly knowledgeable enough to present and cross-examine expert testimony, but cannot testify as an expert in the field of psychiatry. A lawyer who tries medical malpractice cases cannot take the stand as a medical expert. So too, Mr. Watkins does not qualify as an expert in business valuations simply because that was an issue in the Scrushy case; he *tried* the case, he did not *testify* in the case.

In *Rosvold v. L.S.M. Systems Engineering, Inc.*, 2007 WL 3275107, \*2 (E.D.Mich. 2007), Judge Cook rejected arguments remarkably similar to those of Defendants. There, the plaintiff offered one James Johnson as an expert to testify to the valuation of plaintiff's six percent minority share in a closely held corporation. Despite Johnson's personal experience in acquiring companies and his advanced degree from the Wharton School of Business, the court found that he did not have the requisite qualifications to be an expert witness under Rule 702. In language that could apply with equal force to Mr. Watkins, the court held:

> "After reviewing the record in this cause, the Court concurs with the LSM's argument as it relates to Johnson's qualifications. More specifically, the Court does not believe that he possesses the requisite knowledge, skill, experience, training, or education to opine or testify about such matters as an valuation of Rosvold's six percent share in LSM. Other than his personal experience of "acquiring several companies" and having earned his a master's degree from the Wharton School of Business at the University of

---

[5] *United States v. Richard Scrushy*, No. 03-CR-530 (N.D. Ala. 2005).

> Pennsylvania in 1978, Johnson's resume fails to incorporate any professional experience in valuation analysis. Furthermore, Rosvold has failed to provide the Court with evidence of Johnson's enrollment or active participation in any of the recognized organizations or institutions that establish the standards or rules to which their members must adhere when preparing a business valuation. While not dispositive, Johnson acknowledges in his report that (1) his assigned task in this case is the first time wherein he has been asked to provide testimony in a lawsuit, and (2) he has not written any articles or books relating to this now-challenged subject matter."

Because Mr. Watkins has failed Rule 702's threshold requirement that he be qualified as an expert, it is not necessary to discuss the soundness of his methodology or the reliability of his conclusions. In terms of reliability, however, I do note that placing a high monetary value on hypothetical carbon credit entitlements for a project that does not exist seems highly speculative.[6]

Accordingly, Mr. Watkins' reports will be excluded, and Mr. Watkins will not be permitted to testify as an expert witness under Rule 702.

### B. Rule 701

Defendants argue in the alternative that Mr. Watkins' reports and testimony are admissible as lay opinion testimony under Fed.R.Evid. 401. That Rule provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The decision to admit such testimony is entrusted to the district court's discretion,

---

[6] Plaintiffs argue that "[n]o reasonable valuation expert could possibly reach a valuation conclusion for Pencor or Masada in excess of $1 billion (or even $4 million), based on paper agreements of projected future operations for facilities that do not exist." *Plaintiffs' Reply Brief [Doc. #145], p.3.*

and "the modern trend among courts favors admission of lay opinion testimony, provided that it is well-founded on personal knowledge and is opened to cross-examination." *United States v. Valdez-Reyes*, 165 Fed.Appx. 387, 392 (6th Cir. 2006), quoting *United States v. Booth,* 936 F.2d 573 (6th Cir.1991)(Table), *cert. denied,* 112 S.Ct. 915 (1992).

Section (c) of Rule 701 was added in the 2000 amendments to ensure that parties would not circumvent the expert reliability requirement of Rule 702 by "proffering an expert in lay witnesses clothing." Fed.R.Evid. 701 Advisory Committee Notes, 2000 amendments. However, the Advisory Committee also observed that "most courts have permitted the owner or officer of a business to testify to the value ... of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.... *Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business*. The amendment does not purport to change this analysis." *Id*. (Emphasis added).

That a business owner's "specialized knowledge" might involve relatively esoteric matters that might not be familiar to jurors does not disqualify the testimony under Rule 701. As the court aptly observed in *In re LTV Steel Co.*, *Inc*. 285 B.R. 259, 265 (Bkrtcy.N.D.Ohio 2002):

> "This is consistent with logic and practice. Most witnesses in complex matters have helpful background and experience....Most testimony lies somewhere in the vast region between the illiterate eyewitness, who testifies only that 'the light was green,' and the Nobel laureate, who explains the mapping of the human genome. Commentary, practice, and case law support recognizing this reality."

As the owner of Watkins Aviation and Pencor, and manager of Masada, Mr. Watkins has "particularized knowledge" of the value of those companies and their assets

"by virtue of his position in the business." *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003)(lay witnesses permitted to testify to the details of ship repairing based on "particularized knowledge garnered from years of experience within the field"); *In re LTV Steel Co.,* 285 B.R. at 265 (witness testifies as to projected cost of environmental liabilities, based "upon his own knowledge and daily participation in the Debtor's affairs to prepare his projections"); *Miss. Chem. Corp. v. Dresser-Rand Co.,* 287 F.3d 359, 362 (5th Cir.2002) (allowing corporation's director of risk management to testify as to lost profits due to his particularized knowledge about the company's underlying accounts).

Therefore, in the exercise of my discretion under Rule 701, I will permit Mr. Watkins to offer lay opinion testimony as to the value of the Pencor stock, the Masada group of companies, and the availability and value of the carbon credit entitlements. Mr. Watkins' reports are admissible to the extent that they do not contain hearsay statements and conclusions of others.[7]

Of course, Mr. Watkins' testimony, both at his deposition and at trial, will be subject to cross-examination, and nothing in this Opinion and Order precludes objections to specific questions based on relevance, hearsay, foundation or any other evidentiary basis.

---

[7] I recognize that Mr. Watkins' own opinion is derived in part from a report prepared by Black Emerald, Ltd. While the Black Emerald report and conclusions are not themselves admissible, Mr. Watkins' reliance on that information does not render his own *testimony* inadmissible. *See Lightning Lube, Inc. v. Witco Corp*. 4 F.3d 1153, 1175 (3rd Cir.1993)("given [the witness's] knowledge and participation in the day-to-day affairs of [the] business, [the witness's] partial reliance on [a] report, even if prepared by an outsider, does not render [the witness's] testimony beyond the scope of R. 701."). Hearsay statements in the reports themselves, however, are excludable.

### III. CONCLUSION

For these reasons and under these terms, Plaintiffs' Motion *In Limine* to Exclude the Expert Report, Rebuttal Report, and Related Expert Testimony of Donald V. Watkins [Doc. #139] is GRANTED IN PART AND DENIED IN PART.

The motion to exclude Mr. Watkins' reports and testimony under Fed.R.Evid. 702 is GRANTED.

The motion to exclude Mr. Watkins' testimony and reports as lay opinion testimony under Fed.R.Evid. 701 is DENIED.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: November 3, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 3, 2011.

s/Johnetta M. Curry-Williams
Case Manager
