UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, et al,

  Plaintiffs,

v.

DONALD V. WATKINS, et al,    CASE NUMBER: 08-12582
                HONORABLE VICTORIA A. ROBERTS

  Defendants/
  Third-Party Plaintiffs,

v.

NORTH POINT ADVISORS, LLC, et al,

  Third-Party Defendants.
  _____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 221)

**I. INTRODUCTION**

The Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (collectively, "the Funds") sued Donald V. Watkins and his company, Watkins Aviation, LLC (collectively, "Watkins"), for breach of contract. Watkins filed a third-party complaint against Adrian Anderson and his company, North Point Advisors (collectively, "North Point") and Jeffrey Conry, the president and CEO of TradeWinds Airlines.

Before the Court is the Funds' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Funds' motion is **DENIED**.

## II.     BACKGROUND

### A. Contractual Framework

This lawsuit has its roots in a deal to invest in the development of a cargo airline company. On February 26, 2008, Watkins Aviation acquired 77% of the outstanding shares of TradeWinds Airlines, Inc., becoming its majority shareholder. The same day, the Funds, Watkins and TradeWinds executed a series of interrelated agreements designed to finance the acquisition of TradeWinds, pay off the airline's debt, and provide it with needed capital. The Watkins Defendants allege North Point is the Funds' agent and financial advisor on this transaction.

#### 1. Credit Agreement and Term Notes

The cornerstone of the deal is the Second Amended and Restated Aircraft Purchase Money Credit Agreement ("the Credit Agreement"). Through this Credit Agreement, the Funds promised to lend $30 million to TradeWinds ("the Loan"). In return, TradeWinds signed two term notes worth $15 million each, one payable to the Police and Fire Retirement System of the City of Detroit and the other to the General Retirement System of the City of Detroit.

Section 9.1 of the Credit Agreement lists several "Events of Default." If any one occurs, the Funds may demand complete and immediate repayment of the Loan. These include if TradeWinds: (1) files for bankruptcy; (2) receives permission to file for bankruptcy from its board of directors ("the Board"); or (3) fails to receive two $5 million capital contributions from Watkins Aviation; one within 30 days of signing the Loan, and another within six months.

2

### 2. Donald Watkins and Watkins Aviation's Guaranties

As part of the arrangement, Mr. Watkins and Watkins Aviation executed separate guaranty agreements ("the Guaranties") by which they assume the risk of TradeWinds' default and promise to repay the Loan in full at maturity, or earlier if required. These Guaranties include waiver of defenses sections.

### 3. Stockholders' Agreement

The Funds, Watkins Aviation and TradeWinds' then-president Jeffrey Conry also signed a Stockholders' Agreement, which required Watkins Aviation to give TradeWinds two separate $5 million contributions in capital; one within 30 days of the Loan, and another within six months. Failure to receive these payments is an Event of Default.

On March 26, 2008, Watkins Aviation conveyed to TradeWinds, as its first capital contribution: cash, a waiver of Watkins Aviation's entitlement to funds in reimbursable TradeWinds acquisition transactional expenses, and stock in a corporation; the aggregate value was $5 million. On April 9, Mr. Anderson informed Mr. Conry by e-mail that the contribution was, according to him, "reasonable." The Funds did not initially object to the contribution.

### B. Events Leading to TradeWinds' Bankruptcy

On May 30, 2008, the Board held a meeting out of concern that TradeWinds was having liquidity issues. The Funds were represented in this meeting by Tyrone Scott, whom the Funds designated as an independent Board member to represent their equity interest in TradeWinds. Also present was James McTevia, the Funds' bankruptcy consultant. Mr. McTevia recommended TradeWinds' restructuring under Chapter 11.

The Board authorized TradeWinds' management to reorganize up to and including Chapter 11 restructuring. Under the Credit Agreement, the authorization of bankruptcy proceedings is an Event of Default.

On June 9, 2008, the Funds sent TradeWinds a notice of default, citing the Board's bankruptcy resolution. The Funds also claimed TradeWinds did not receive the first $5 million contribution from Watkins Aviation; they say so because it was not made entirely in cash. A few days later, on June 13, the Funds accelerated the Loan, and on July 25, TradeWinds instituted Chapter 11 bankruptcy proceedings in U.S. Bankruptcy Court for the Southern District of Florida. Filing for bankruptcy is an Event of Default.

**C. Procedural Background**

On June 17, 2008, the Funds filed their Original Complaint. They alleged three grounds upon which TradeWinds defaulted on its Loan obligations, including its failure to receive $5 million from Watkins Aviation. The first two counts of the Original Complaint charged Mr. Watkins and Watkins Aviation with breach of guaranty. A third count accused Watkins Aviation of breaching the Stockholders' Agreement by failing to contribute capital to TradeWinds. The fourth count asked for a declaratory judgment approving the sale of TradeWinds' stock by the Police and Fire Retirement System of the City of Detroit.

On December 22, 2008, the Funds amended their complaint. The Amended Complaint restates the three original Events of Default, and cites three new grounds for default: (1) TradeWinds's failure to inform the Funds that it acquired a jet engine; (2) the Board resolution authorizing bankruptcy; and (3) TradeWinds' bankruptcy filing. The Amended Complaint also discards claims against Watkins Aviation for breach of the

Stockholders' Agreement. Instead, the Funds claim only that Mr. Watkins and Watkins Aviation breached their Guaranties by failing to repay the Loan after TradeWinds' default.

Watkins filed a counterclaim, which was amended on July 18, 2008. The amended counterclaim accused the Funds of breaching their contractual obligations under the Credit Agreement by wrongfully: (1) declaring TradeWinds in default; (2) accelerating the entire TradeWinds' debt; (3) causing negative publicity to be published regarding TradeWinds; and (4) precluding Watkins Aviation from exercising its rights as majority shareholder of TradeWinds. On September 30, 2009, the Court dismissed Watkins's counterclaims for lack of standing; the Court also dismissed the Funds' motion for judgment on the pleadings on the issue of liability and denied Watkins's motion to compel arbitration because no pending issue is referable to arbitration.

Watkins also filed a third-party complaint against North Point, accusing them of fraudulently misrepresenting the adequacy of Watkins Aviation's capital contribution. North Point filed a motion to dismiss the third-party complaint, which the Court denied on September 30, 2009. Discovery closed on September 13, 2012.

The Funds filed this Motion for Summary Judgment on October 1, 2012. The motion is fully briefed. Oral argument was heard on January 24, 2013.

**III. Standard of Review**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the

governing substantive law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**IV. Analysis**

The Funds argue that the Watkins Defendants are liable on their personal guaranties because: (A) at least six events of default occurred, and (b) Watkins waived all defenses to liability except full payment and alleged defenses are inapplicable or waived. They say the Events of Default include: (1) material, incorrect representations were made regarding Mr. Watkins' financial condition; (2) TradeWinds did not receive the $5 million capital contribution in cash; (3) TradeWinds failed to pay its debt obligations as they became due; (4) the Board voluntarily authorized management to file for bankruptcy protection; (5) TradeWinds never made an interest payment on its loan

debt; and (6) TradeWinds filed for bankruptcy.

The crux of Watkins' argument is that the Funds breached the Credit Agreement first and/or prevented TradeWinds's performance; the Watkins Defendants say that Tradewinds was not in default at the time the Funds accelerated the loan and that their defenses are valid.

Viewing the evidence in the light most favorable to Watkins, the Court believes that there are numerous issues of fact affecting each of the alleged Events of Default. Summarily, these include, but are not limited to:

(1) The extent of the Funds' ownership and control, if any, of TradeWinds;

(2) Whether Mr. McTevia represented the Funds' interest at the Board's meeting;

(3) Whether the Funds' representatives influenced the Board's decision to authorize bankruptcy;

(4) Whether the Credit Agreement required that the capital contribution be made exclusively in cash;

(5) The meaning of capital contribution under the Credit Agreement; and

(6) Whether letters regarding Mr. Watkins' financial condition are considered loan documents under the Credit Agreement.

The Watkins Defendants have met their burden to present facts which show genuine issues for trial. Accordingly, summary judgment for the Funds is precluded. The Court need not address the Funds' argument on Watkins' defenses.

**V. Conclusion**

Plaintiff's motion for summary judgment is **DENIED**.

**IT IS ORDERED.**

                                                S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: January 25, 2013

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 25, 2013.
>
> S/Linda Vertriest
> Deputy Clerk